RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0269p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

LEONEL HERNANDEZ-PEREZ,

*Petitioner*,

v.

No. 18-3137

MATTHEW G. WHITAKER, Acting Attorney General,

*Respondent*.

───────────────

On Petition for Review from the Board of Immigration Appeals;
No. A 201 171 555.

Argued: October 18, 2018

Decided and Filed: December 14, 2018

Before: GUY, WHITE, and STRANCH, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** Christopher M. Kozoll, KOZOLL & ASSOCIATES IMMIGRATION LAW PLLC, Louisville, Kentucky, for Petitioner. Dawn S. Conrad, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Christopher M. Kozoll, KOZOLL & ASSOCIATES IMMIGRATION LAW PLLC, Louisville, Kentucky, for Petitioner. Michael C. Heyse, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────────

## OPINION

───────────────

JANE B. STRANCH, Circuit Judge. Leonel Hernandez-Perez originally applied for cancellation of removal based on hardship that his removal would cause his U.S. citizen

daughter, L.  After that application was denied, he filed a motion to reopen removal proceedings based on hardship to his other U.S. citizen child, a boy named A.W.  The BIA denied the motion to reopen for two reasons:  (1) Hernandez-Perez had not established that the new evidence was previously unavailable, and (2) even if the evidence was considered, it did not establish prima facie eligibility for cancellation of removal.  Because the first conclusion is not supported by the record and the second is not based on application of the appropriate legal standard, we **GRANT** the petition for review and **REMAND** to the BIA for further proceedings consistent with this opinion.

## I.  BACKGROUND

Hernandez-Perez, a Mexican citizen, has lived and worked in the United States since 2000.  He and his wife, also a Mexican citizen, have one daughter, L., a 17-year-old U.S. citizen.[1]  Hernandez-Perez's record over the 18 years he has lived in this country has not been perfect.  The immigration judge who heard his case was "very concerned" about his criminal history, "although most of the offenses are misdemeanor traffic offenses."  But the same judge commended Hernandez-Perez for maintaining steady employment and providing for his family despite a handicap to his right hand.  Letters submitted to the immigration judge describe Hernandez-Perez as a good neighbor, a hard-working employee, a devoted father, and an active member of his church.

In 2011, Hernandez-Perez was placed in removal proceedings and applied for cancellation of removal.  Cancellation of removal is a form of discretionary immigration relief available to a noncitizen who, among other requirements, "establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."  8 U.S.C. § 1229b(b)(1)(D).  At the merits hearing on his application, held in August 2015, Hernandez-Perez argued that, if he were removed, his daughter, L., would remain in the United States with her mother and so would face "permanent family separation."  The immigration judge

---

[1]Hernandez-Perez also has an adult daughter living in Mexico with her mother, who is not Hernandez-Perez's current wife.  This daughter is not a qualifying relative for purposes of cancellation of removal and is not relevant to the instant petition.

determined that Hernandez-Perez satisfied the other requirements for cancellation of removal but considered family separation to be "well within the range of 'normal' hardship experienced by any citizen [whose] father would be forced to return to Mexico." In November 2016, the immigration judge denied the application.

Hernandez-Perez alleges that his family circumstances changed after that decision was issued. He avers that he has been aware for some time that an eight-year-old U.S. citizen named A.W., whose mother is not his wife, might be his son. A.W. was not mentioned in the original application for cancellation of removal. According to Hernandez-Perez, A.W.'s grandparents— his legal guardians since 2014—foiled his efforts to build a relationship with the boy. Before his immigration court hearing, they told Hernandez-Perez that their daughter had lied to him about the possibility that A.W. was his child because she wanted money. Both grandparents, but especially A.W.'s grandmother, told Hernandez-Perez that if he pursued a relationship with A.W., "they would call the police and have [him] arrested for trespassing, and perhaps harassment." A.W.'s grandmother "even said that she had a gun, and would shoot [him] if [he] came near [A.W.]" The grandparents "would not consent to a DNA test, and did everything they could to foreclose a relationship between [Hernandez-Perez] and [A.W.]" Hernandez-Perez worried that if he "pushed too hard," they would "forever cut [him] out of [A.W.]'s life completely." But after A.W.'s grandmother died—the record does not reveal precisely when that occurred—all of that changed. In July 2017, A.W.'s grandfather called Hernandez-Perez and told him that A.W.'s mother had been incarcerated since January and that he was seriously ill and "no longer able to provide care for [A.W.]"

One week after that call, the BIA dismissed Hernandez-Perez's appeal from the immigration judge's decision. Hernandez-Perez does not contest that dismissal.

Hernandez-Perez had a DNA test performed about two weeks later, in early August 2017, which confirmed that he is A.W.'s father. He then filed a motion to reopen removal proceedings, this time requesting cancellation of removal because of hardship not to his daughter, L., but to his son, A.W. In the accompanying affidavit, Hernandez-Perez described his relationship with A.W., A.W.'s changed family circumstances, and his fear that, if he were deported, A.W. would "become a ward of the state." He also stated that A.W. "may have been neglected" by his

mother, who has a history of drug abuse, giving as an example a day when he had to leave work to pick up A.W. because his mother was being arrested.

The BIA denied the motion to reopen, explaining that Hernandez-Perez had not established that the evidence about A.W. was previously unavailable and that, even if it were considered, the evidence did not establish prima facie eligibility for cancellation of removal. Hernandez-Perez petitions for review of that denial.

## II. ANALYSIS

### A. Jurisdiction

Each party raises a jurisdictional objection that must be resolved before considering the merits of the petition. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (rejecting the doctrine of "hypothetical jurisdiction" and requiring that jurisdiction be established "as a threshold matter").

#### 1. Jurisdiction in Light of *Pereira*

In his reply brief, Hernandez-Perez argues that pursuant to a recent Supreme Court case, *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), jurisdiction never properly vested with the immigration judge—or, ultimately, with the BIA or this court.

The Government filed a motion to strike the portion of the reply brief raising this argument, arguing that this court does not normally entertain arguments raised for the first time in a reply brief. As a general matter, the Government is correct. *See Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 580 (6th Cir. 2016). Subject matter jurisdiction, however, "can never be forfeited or waived." *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs*, 558 U.S. 67, 81 (2009) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). The motion to strike is therefore denied.

At oral argument, counsel for Hernandez-Perez abandoned the jurisdictional argument, explaining that a panel of this court had decided the issue against his client the week before. (Oral Arg. at 1:35–1:53) Counsel appears to reference *de la Paz-Zaragoza v. Sessions*, No. 18-3221, 2018 U.S. App. LEXIS 28780 (6th Cir. Oct. 11, 2018) (order), an unpublished and

nonbinding order that does not engage with *Pereira*'s text or holding. *Id.* at *1–2. Having been alerted to a possible jurisdictional flaw, and in the absence of binding authority resolving the question, "we must decide [the issue] for ourselves." *Bd. of Trs. of Plumbers, Local Union No. 392 v. Humbert*, 884 F.3d 624, 625 (6th Cir. 2018).

Federal immigration regulations provide that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." 8 C.F.R. § 1003.14(a). In this case, the relevant charging document is a Notice to Appear (NTA). *See id.* § 1003.13 (listing an NTA as one type of charging document). The section of the Immigration and Nationality Act (INA) describing NTAs provides that each NTA should "specify[]," among other requirements, "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). Hernandez-Perez's NTA named the location of his removal proceedings but stated only that he was to appear "on a date to be set at a time to be set."[2] In a related context, *Pereira* held that an NTA "that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under section 1229(a).'" 138 S. Ct. at 2110 (quoting 8 U.S.C. § 1229b(d)(1)(A)). The *Pereira* Court explained that "[f]ailing to specify integral information like the time and place of removal proceedings unquestionably would deprive the notice to appear of its essential character." *Id.* at 2116–17 (brackets, citation, and internal quotation marks omitted). Hernandez-Perez had argued that, because the only NTA in the record does not list the date and time of proceedings, no charging document with the "essential character" of an NTA was filed with the immigration court, and so jurisdiction never vested under 8 C.F.R. § 1003.14.

Prior to *Pereira*, we rejected versions of this argument, albeit in unpublished cases, holding that "service of an NTA that indicates that the date and time of a hearing will be set in the future, followed by successful service of a separate notice specifying the precise date and time of the hearing, satisf[ies] the notice requirements of [8 U.S.C. § 1229(a)(1)]." *Herrera-Orozco v. Holder*, 603 F. App'x 471, 473–74 (6th Cir. 2015) (collecting unpublished Sixth

---

[2]Hernandez-Perez was subsequently issued several documents titled "Notice of Hearing" (all of which state the date, time, and place of proceedings), but no updated NTA. A Notice of Hearing is not a charging document under § 1003.13.

Circuit cases and published cases from other circuits).  Other circuits take similar approaches.
The Seventh Circuit, for example, held that "the fact that the government fulfilled its
requirements under [8 U.S.C. § 1229(a)] in two documents did not strip the [immigration judge]
of jurisdiction."  *Dababneh v. Gonzales*, 471 F.3d 806, 810 (7th Cir. 2006); *see also, e.g.*, *Haider
v. Gonzales*, 438 F.3d 902, 906–09 (8th Cir. 2006).  Hernandez-Perez argues that *Pereira*
undermined that consensus.[3]

The BIA recently issued a precedential opinion rejecting this argument.  In *Matter of
Bermudez-Cota*, the Board held that an NTA "that does not specify the time and place of an
alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal
proceedings and meets the requirements of [8 U.S.C. § 1229(a)], so long as a notice of hearing
specifying this information is later sent to the alien."  27 I. & N. Dec. 441, 447 (B.I.A. 2018).  In
this case, there is no dispute that Hernandez-Perez subsequently received satisfactory notices of
hearings.  We must therefore address the Board's interpretation of *Pereira*.

*Bermudez-Cota* is the Board's binding interpretation of regulations promulgated by the
Department of Justice.  *See* 8 C.F.R. §§ 1003.13–.15; *see also* Executive Office for Immigration
Review; Rules of Procedures, 57 Fed. Reg. 11,568 (Apr. 6, 1992).  In this circumstance, we
review the Board's legal conclusions de novo but afford "substantial deference" to its
"interpretation of the INA and accompanying regulations."  *Shaya v. Holder*, 586 F.3d 401, 405
(6th Cir. 2009) (quoting *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009)).

---

[3]Neither we nor our sister circuits have issued a precedential decision addressing this position.  Four
unpublished orders from this court have mentioned the argument; these orders are not binding and do not fully
consider the impact of *Pereira* on the jurisdictional regulations.  *See Gonzalez-De Leon v. Sessions*, No. 18-3583,
2018 U.S. App. LEXIS 30675 (6th Cir. Oct. 29, 2018) (order) (referring the jurisdictional "issue of first impression"
to a merits panel); *Santos-Santos v. Sessions*, No. 18-3515, 2018 U.S. App. LEXIS 29540 (6th Cir. Oct. 18, 2018)
(order) (denying a motion to stay removal premised on *Pereira*); *de la Paz-Zaragoza v. Sessions*, No. 18-3221, 2018
U.S. App. LEXIS 28780 (6th Cir. Oct. 11, 2018) (order) (concluding, without engaging with *Pereira*, that
jurisdiction vests as long as the requirements of 8 C.F.R § 1003.15 are met); *Moreno-Martinez v. Sessions*, No. 18-
3798, 2018 U.S. App. LEXIS 24190 (6th Cir. Aug. 24, 2018) (order) (deeming *Pereira* irrelevant because the
petitioner never applied for cancellation of removal).  One unpublished decision from the Ninth Circuit remanded a
case to the BIA "with the instructions that the agency first consider its jurisdiction in light of *Pereira* before
reaching any other issue," *Lopez-Valiente v. Sessions*, No. 14-72270, --- F. App'x ---, 2018 U.S. App. LEXIS 24754,
at *6 (9th Cir. Aug. 30, 2018), but that court did not itself consider the merits of the argument.

Agency interpretations of their own regulations are "controlling unless 'plainly erroneous or inconsistent with the regulation.'" *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989)); *see also Khalili*, 557 F.3d at 435 ("The BIA's interpretation of the [INA] and regulations will be upheld unless the interpretation is arbitrary, capricious, or manifestly contrary to the statute." (citation and internal quotation marks omitted)); *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 503 (6th Cir. 2008) (citing *Auer* and affording "considerable deference" to "the BIA's interpretation of its precedents"); *Robert v. Reno*, 25 F. App'x 378, 381–83 (6th Cir. 2002) (applying *Auer* deference to a BIA interpretation of an immigration regulation). Although "*Auer* deference is not an inexorable command in all cases," *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1208 n.4 (2015), a party seeking to overcome *Auer* deference must show more than just another plausible reading of the regulation, *see, e.g.*, *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 159 (2012) (declining to defer to a newly articulated agency interpretation that "require[d] regulated parties to divine the agency's interpretations in advance or else be held liable when the agency announces its interpretations for the first time in an enforcement proceeding and demands deference").

In this case, as in *Pereira*, we begin by asking whether "resort to [agency] deference" is unnecessary because the statutory and regulatory text "suppl[y] a clear and unambiguous answer to the interpretive question at hand." 138 S. Ct. at 2113. *Pereira* itself provides the most relevant example of this inquiry. The issue in *Pereira* required the Court to begin by looking to the plain text of the stop-time statute, which provides that the period of continuous physical presence necessary to qualify for cancellation of removal ends "when the alien is served a notice to appear under section 1229(a)." 138 S. Ct. at 2114 (quoting 8 U.S.C. § 1229b(d)(1)(A)). The Court emphasized the "express[] referenc[e]" to § 1229(a), which in turn requires an NTA to "specify[] . . . [t]he time and place at which the [removal] proceedings will be held." *Id.* (quoting 8 U.S.C. § 1229(a)(1)(G)(i)). The Court concluded that, "based on the plain text of the statute, it is clear that to trigger the stop-time rule, the Government must serve a notice to appear that, at the very least, 'specif[ies]' the 'time and place' of the removal proceedings." *Id.* (alteration in original).

In the jurisdictional context, the INA provides that "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien," 8 U.S.C. § 1229a(a)(1), and contains a section titled "Initiation of removal proceedings" that describes what information must be specified in an NTA, *id.* § 1229. The statutory text does not, however, explain when or how jurisdiction vests with the immigration judge—or, more specifically, denote which of the several requirements for NTAs listed in § 1229(a)(1) are jurisdictional. Because Congress did not address that question, the agency had some discretion in fashioning a set of jurisdictional requirements. *See Vt. Yankee Nuclear Power Corp. v. NRDC, Inc.*, 435 U.S. 519, 543 (1978) ("Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure . . . ." (citation and internal quotation marks omitted)). The agency could not abrogate the requirements of § 1229(a)(1), but the BIA's conclusion that "a two-step notice process is sufficient to meet the statutory notice requirements" is not inconsistent with the text of the INA. *Bermudez-Cota*, 27 I. & N. Dec. at 447.

We look next to the regulatory text, which provides that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." 8 C.F.R. § 1003.14(a). A neighboring section lists an NTA as one of three potential types of charging documents. *Id.* § 1003.13 ("*Charging document* means the written instrument which initiates a proceeding before an Immigration Judge. . . . [T]hese documents include a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien."). A third regulation lists the information that must be included in an NTA, such as "[t]he nature of the proceedings," "[n]otice that the alien may be represented, at no cost to the government," and assorted pieces of "administrative information," including the noncitizen's name and address, *id.* § 1003.15, but "does not mandate that the time and date of the initial hearing must be included in that document," *Bermudez-Cota*, 27 I. & N. Dec. at 445. Unlike the stop-time statute in *Pereira*, the regulations do not "expressly referenc[e] § 1229(a)." *Pereira*, 138 S. Ct. at 2114. We agree with the BIA that the regulatory language is ambiguous: "The regulation does not specify what information must be contained in a 'charging document' at the time it is filed with an

Immigration Court, nor does it mandate that the document specify the time and date of the initial hearing before jurisdiction will vest." *Bermudez-Cota*, 27 I. & N. Dec. at 445.

The remaining question is whether *Pereira* itself suggests that the Board's interpretation of its regulations is otherwise arbitrary or undeserving of deference. *See Khalili*, 557 F.3d at 435. For example, *Bermudez-Cota* does not mention *Pereira*'s invocation of "common sense":

> If the three words "notice to appear" mean anything in this context, they must mean that, at a minimum, the Government has to provide noncitizens "notice" of the information, *i.e.*, the "time" and "place," that would enable them "to appear" at the removal hearing in the first place. Conveying such time-and-place information to a noncitizen is an essential function of a notice to appear, for without it, the Government cannot reasonably expect the noncitizen to appear for his removal proceedings.

138 S. Ct. at 2115. That instinct carries some weight outside the context of the stop-time rule. There is also some common-sense discomfort in adopting the position that a single document labeled "Notice to Appear" must comply with a certain set of requirements for some purposes, like triggering the stop-time rule, but with a different set of requirements for others, like vesting jurisdiction with the immigration court. On the other hand, importing *Pereira*'s holding on the stop-time rule into the jurisdictional context would have unusually broad implications. According to the Government, "almost 100 percent" of NTAs issued during the three years preceding *Pereira* did not include the time and date of the proceeding. *Id.* at 2111.

*Pereira*'s emphatically "narrow" framing, *id.* at 2110, 2113, counsels in favor of distinguishing between the two contexts. *Pereira* confronted a specific question: "If the Government serves a noncitizen with a document that is labeled 'notice to appear,' but the document fails to specify either the time or place of the removal proceedings, does it trigger the stop-time rule?" *Id.* at 2110. Hernandez-Perez's case does not present the same narrow question; no one disputes that he satisfies the ten-year requirement regardless of when the stop-time rule was triggered. We find persuasive the Board's reasoning that, "[h]ad the Court intended to issue a holding as expansive as the one advanced . . ., presumably it would not have specifically referred to the question before it as being 'narrow.'" *Bermudez-Cota*, 27 I. & N. Dec. at 443.

Other components of *Pereira* counsel against applying its NTA rule in the context of jurisdiction. Like the BIA, we find it significant that, in *Pereira*, "the Court did not purport to invalidate the alien's underlying removal proceedings or suggest that proceedings should be terminated." *Id.*; *see also Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (requiring courts to examine their own jurisdiction even if the parties "have disclaimed or have not presented" the issue). If *Pereira*'s holding applied to jurisdiction, there also would not have been jurisdiction in *Pereira* itself. But the Court took up, decided, and remanded *Pereira* without even hinting at the possibility of a jurisdictional flaw.

We agree with the Board that *Pereira* is an imperfect fit in the jurisdictional context and it does not mandate a different conclusion than the one already reached by this court and all our sister circuits. *See Herrera-Orozco*, 603 F. App'x at 473–74 (collecting cases). We therefore conclude that jurisdiction vests with the immigration court where, as here, the mandatory information about the time of the hearing, *see* 8 U.S.C. § 1229(a), is provided in a Notice of Hearing issued after the NTA.

### 2. Scope of This Court's Jurisdiction

The second jurisdictional objection is advanced by the Government. The Government argues that we lack jurisdiction over the petition for review because Hernandez-Perez "seeks review of a motion to reopen where the underlying agency decisions denied discretionary relief."

From a procedural standpoint, Hernandez-Perez petitions for review of the Board's denial of his motion to reopen. In *Kucana v. Holder*, the Supreme Court squarely held that such denials are normally "subject to judicial review." 558 U.S. 233, 253 (2010). That review is, of course, deferential. *See Trujillo Diaz v. Sessions*, 880 F.3d 244, 248 (6th Cir. 2018) ("We review the BIA's denial of a motion to reopen immigration proceedings for abuse of discretion."). *Kucana* did not, however, "reach the question whether review of a reopening denial would be precluded if the court would lack jurisdiction over the alien's underlying claim for relief." *Id.* at 250 n.17. That is the question presented here. The underlying claim—both in Hernandez-Perez's original petition and in his motion to reopen—is for cancellation of removal, which the INA lists among the discretionary matters that "no court shall have jurisdiction to review." 8 U.S.C.

§ 1252(a)(2)(B); *see Santana-Albarran v. Ashcroft*, 393 F.3d 699, 703 (6th Cir. 2005). We normally recognize only limited exceptions to that jurisdictional bar, based on the INA's general jurisdictional savings provision. *See Ettienne v. Holder*, 659 F.3d 513, 517 (6th Cir. 2011) ("The preclusion of review of cancellation denials does not extend to 'questions of law' under 8 U.S.C. § 1252(a)(2)(D), or to 'nondiscretionary issues' . . . ." (quoting *Aburto-Rocha*, 535 F.3d at 503)).

Striking the proper jurisdictional balance for motions to reopen is important. On the one hand, if we review motions to reopen more generously than the underlying applications for relief, "petitioners could make an end-run around the bar to review of their direct appeals simply by filing a motion to reopen." *Ortiz-Cervantes v. Holder*, 596 F. App'x 429, 433 (6th Cir. 2015) (quoting *Fernandez v. Gonzales*, 439 F.3d 592, 602 (9th Cir. 2006)). On the other hand, if we can never review motions to reopen, noncitizens are denied even "a small safety valve in the form of court review to ensure that the BIA lives by its rules and at least considers new information." *Pilica v. Ashcroft*, 388 F.3d 941, 948 (6th Cir. 2004).

*Pilica v. Ashcroft* explains how to strike that balance. There, the petitioner filed an appeal from the decision of the immigration judge and, while that appeal was pending, filed a motion to remand[4] to seek "relief, in the form of adjustment of status, that was not available to him at the time of his original hearing." *Id.* at 945. The BIA denied both his appeal and his motion without opinion. *Id.* We determined that we had jurisdiction over the motion because "a motion to reopen that does not involve the consideration of relief on the merits should not be treated as 'regarding' the granting of relief." *Id.* at 948 (quoting 8 U.S.C. § 1252(a)(2)(B)(i)). *Pilica* went on to review the denial of the motion to remand for abuse of discretion.

We have since relied on *Pilica* to explain that we "lack jurisdiction to review the denial of a motion to reopen or remand in a cancellation of removal case, unless the motion raised a new hardship ground not decided in the original decision." *Ortiz-Cervantes*, 596 F. App'x at 432 (quoting *Flores-Cedra v. Holder*, 572 F. App'x 389, 391 (6th Cir. 2014), and citing *Pilica*, 388 F.3d at 948). At least two other circuits have taken the same position. *See Vargas v. Holder*, 567 F.3d 387, 390–91 (8th Cir. 2009) ("[T]he new evidence provides a completely new basis for

---

[4]Motions to remand and motions to reopen are "generally treated the same." *Ahmed v. Mukasey*, 519 F.3d 579, 585 n.7 (6th Cir. 2008); *see also Liu v. Holder*, 560 F.3d 485, 489 n.4 (6th Cir. 2009).

seeking cancellation of removal. Accordingly, we have jurisdiction to review the BIA's refusal to grant Vargas's motion to remand, and we do so for abuse of discretion." (footnote omitted)); *Fernandez*, 439 F.3d at 602–03 ("[W]e have jurisdiction over motions to reopen regarding cases in which . . . the evidence submitted addresses a hardship ground so distinct from that considered previously as to make the motion to reopen a request for new relief, rather than for reconsideration of a prior denial.").

Hernandez-Perez's motion to reopen described potential hardship to his son, A.W.; the original application described potential hardship to his daughter, L. The motion therefore "raised a new hardship ground not decided in the original decision." *Ortiz-Cervantes*, 596 F. App'x at 432 (citation omitted). As a result, we have jurisdiction to review the denial.

**B. The Board's Determination**

We turn now to the merits of Hernandez-Perez's petition. We have recently summarized the standard of review applicable to denials of motions to reopen:

> We review the BIA's denial of a motion to reopen immigration proceedings for abuse of discretion. We will find an abuse of discretion if the BIA's denial was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group. In determining whether the BIA abused its discretion, we look only at the basis articulated in the decision and may not assume that the BIA considered factors that it failed to mention in its opinion.

*Trujillo Diaz*, 880 F.3d at 248 (alteration, brackets, citations, and internal quotation marks omitted). The BIA articulated two bases for denying Hernandez-Perez's motion to reopen, which we address in turn.

1. Availability of Evidence

First, according to the Board, Hernandez-Perez did not "persuasively establish[] that the newly-submitted evidence was previously unavailable at his former (November 22, 2016) hearing before the Immigration Judge." This rationale refers to a regulation, cited by the Board in the second paragraph of its order, that forbids granting a motion to reopen unless the "evidence sought to be offered is material and was not available and could not have been

discovered or presented at the former hearing."  8 C.F.R. § 1003.2(c)(1).  The Government correctly conceded at oral argument that we have jurisdiction to review the Board's conclusion as to the availability of the evidence.  (Oral Arg. at 14:26–14:33)  *See Fernandez*, 439 F.3d at 600 ("Section 1252(a)(2)(B)(i) permits the exercise of jurisdiction in cases in which the BIA rules that a motion to reopen fails to satisfy procedural standards such as the evidentiary requirements specified in 8 C.F.R. § 1003.2(c)(1) . . . ."); *see also Ortiz-Cervantes*, 596 F. App'x at 432 (citing *Fernandez* and assuming jurisdiction for purposes of argument).

Some of the Government's arguments as to availability of evidence presume that the proper inquiry is whether the evidence was available before the Board issued its decision in July 2017.  But the text of the regulation instead asks whether the evidence was available or could have been discovered "at the former hearing."  8 C.F.R. § 1003.2(c)(1); *see also Bushati v. Holder*, 458 F. App'x 457, 458, 460 (6th Cir. 2012) (reviewing whether newly presented evidence was available in 2006, the year the immigration judge denied relief, even though the BIA opinion was issued in 2008).  Focusing on availability at the time of the hearing makes sense, as the BIA normally does not accept and consider new evidence on appeal.  *See* 8 C.F.R. § 1003.1(d)(3)(i), (iv); *see also Orellana v. Sessions*, 722 F. App'x 443, 447 (6th Cir. 2018).  In this case, the Board accurately understood the inquiry to be whether the evidence "was previously unavailable at his former (November 22, 2016) hearing before the Immigration Judge."  The Board made a factual error regarding the date of the hearing; the immigration judge's decision was issued on November 22, 2016, but the hearing took place more than a year before, on August 25, 2015.  Regardless, the BIA's focus on the "hearing before the Immigration Judge" comports with the regulatory text.  The issue before us then is whether the evidence about the hardship to A.W. was available or could have been discovered at the time of the merits hearing before the immigration judge in August 2015.

In making this determination, the BIA must "accept as true reasonably specific facts proffered by an alien in support of a motion to reopen unless it finds those facts to be inherently unbelievable."  *Trujillo Diaz*, 880 F.3d at 252 (quoting *Haftlang v. INS*, 790 F.2d 140, 143 (D.C. Cir. 1986)).  The BIA made no finding of inherent unbelievability in this case, and the immigration judge found Hernandez-Perez credible.  The Board therefore should have accepted

the truth of the factual allegations in the affidavit accompanying Hernandez-Perez's motion, including that (1) Hernandez-Perez suspected A.W. was his son from his birth but was unable to pursue a relationship because A.W.'s legal guardians threatened to have him "arrested for trespassing, and perhaps harassment" or to shoot him; (2) he worried that if he "pushed too hard," including by seeking genetic testing, A.W.'s grandparents would "forever cut [him] out of [A.W.]'s life completely"; (3) A.W.'s mother "was incarcerated in January 2017"; and (4) one week before the BIA's decision was issued in July 2017, A.W.'s grandfather informed Hernandez-Perez that he was seriously ill and unable to care for A.W.

At the time of the hearing in August 2015, Hernandez-Perez did not know and could not have discovered that A.W.'s mother would be imprisoned 17 months later or that A.W.'s grandfather would reveal that he was ill and unable to care for A.W. another six months after that.

As to the fact of Hernandez-Perez's paternity, it is likewise undisputed that genetic evidence was not available until the DNA test was performed on August 3, 2017. The Government argues that proof of paternity nonetheless could have been discovered earlier because Hernandez-Perez concedes that he was "aware of the possibility" that A.W. was his child from the time of his birth. This argument makes two errors. First, even if Hernandez-Perez could have proven paternity at the time of the initial hearing, the conditions giving rise to the alleged hardship—the risk that A.W. would "become a ward of the state" because of his mother's incarceration and his grandfather's illness—had not yet arisen. Second, and more fundamentally, this argument fails to credit Hernandez-Perez's allegations that A.W.'s grandparents threatened to kill him or have him arrested if he pursued a relationship with the child. Because the BIA must accept as true Hernandez-Perez's allegations that, to obtain genetic evidence, he would have had to risk his life or his freedom, there is no reasonable basis to conclude at this stage of the proceedings that the genetic evidence could have been obtained in August 2015.

The BIA therefore erred in determining that the newly submitted evidence was previously available.

2.  Prima Facie Case

The Board's remaining basis for denying the motion to reopen is that "the evidence accompanying the motion is insufficient to establish the respondent's prima facie eligibility for cancellation of removal."   The BIA supported this legal conclusion with two sentences of analysis:

> As asserted by the DHS, the respondent does not have custody of his United States citizen son, it does not appear that he has ever had custody of that child, and the extent of their current relationship is unclear (DHS's Brief in Response to the Respondent's Motion to Reopen at 3).  Moreover, the respondent's assertion that the child may have suffered battery or extreme cruelty at the hands of his mother is speculative and not supported by objective documentary evidence in the record.[5]

On appeal, Hernandez-Perez concedes that the evidence of battery or cruelty "was not sufficiently developed below."  That concession does not doom Hernandez-Perez's case because the Board did not address the central hardship ground raised in the motion to reopen: Hernandez-Perez's fear that A.W. "will become a ward of the state" if his ill grandfather cannot care for him or passes away.

This case would occupy a different position if the Board had addressed that harm and found that it did not rise to the level of "exceptional and extremely unusual hardship," 8 U.S.C. § 1229b(b)(1)(D).  *See Ettienne*, 659 F.3d at 518 ("Review that required a tallying of hardships would amount to second-guessing the agency's weighing of factors, an endeavor that we have repeatedly recognized as beyond our jurisdiction.").  But here, the BIA did not address the proffered hardship ground.  "[W]e may not assume that the BIA considered factors that it failed to mention in its opinion."  *Trujillo Diaz*, 880 F.3d at 248 (brackets and citation omitted); *see also Japarkulova v. Holder*, 615 F.3d 696, 701 (6th Cir. 2010) ("[U]nder the *Chenery* doctrine a reviewing court ordinarily should not uphold administrative action based on reasons different from those given by the agency.").

---

[5]The BIA also concluded that the motion did not "demonstrate[] an exceptional situation that would warrant the exercise of [the BIA's] discretionary authority to reopen his proceedings sua sponte."  This denial of sua sponte reopening is logically and legally distinct from the decision on the merits of the motion to reopen and is not before us in this petition for review.

*a. Custody Determination*

We therefore must determine whether the BIA could properly deny this motion to reopen on the remaining articulated ground—because, "[a]s asserted by the DHS, [Hernandez-Perez] does not have custody of his United States citizen son, it does not appear that he has ever had custody of that child, and the extent of their current relationship is unclear." The Government urges us to interpret this single sentence as a reasoned application of the INA's definition of "child." *See* 8 U.S.C. § 1101(b)(1).

We have recently emphasized, however, that we do not make interpretive leaps on the Board's behalf. In *Trujillo Diaz*, we reviewed a denial of a motion to reopen in which the Board "did not state why it found Trujillo Diaz's evidence that she could not relocate to be insufficient" and did not "acknowledge any evidence that it considered in determining that she could safely relocate within Mexico." 880 F.3d at 255. That failure to provide any analysis was itself an abuse of discretion: "Though it need not write an exegesis on every contention, the BIA must consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted. Cursory, summary, or conclusory statements are inadequate." *Id.* (citations and internal quotation marks omitted).

In this case, the Board's analysis was similarly cursory. *See Preçetaj v. Sessions*, 907 F.3d 453, 458–59 (6th Cir. 2018) (citing cases that reversed BIA analyses of one paragraph or less). The introductory paragraphs of the Board's denial of Hernandez-Perez's motion describe some of the law that governs motions to reopen, but do not cite or discuss any cases, statutes, or regulations dealing with familial relationships. The Board's only citation in support of its analysis is to the third page of the Government's brief, which it largely quotes. The brief also fails to cite any law on this point. The Board relies on only one fact from the record—that Hernandez-Perez does not have and has not had custody of A.W. Because the order does not mention the remainder of Hernandez-Perez's allegations, including his description of his relationship with A.W., the Board "failed to demonstrate that it evaluated or analyzed the evidence presented to it." *Id.* at 458. Moreover, custody is not the test of whether a child can be claimed for immigration purposes. *Cf. Matter of Vizcaino*, 19 I. & N. Dec. 644, 648 (B.I.A. 1988) (evaluating a bona fide parent-child relationship by looking for "some evidence of

emotional and/or financial ties").  The BIA did not apply the test from *Matter of Vizcaino* to the facts of this case, and the conclusory nature of the order prevents us from discerning if it applied any test at all.

Because the Board did not consider the facts in the record, cite legal authority, or apply precedent, it "has not articulated a basis to allow for meaningful review by this court." *Preçetaj*, 907 F.3d at 459.  Remand is therefore necessary to give the Board an opportunity to properly apply settled law.  We emphasize that, in remanding, we make no determinations on the issues raised or the merits of this application.  These are questions for the BIA to decide in the first instance.

### b.  Burden of Proof

Finally, we turn to Hernandez-Perez's argument that the Board applied a too-strict rule governing his burden of proof.  Because the Board will necessarily have to decide what burden of proof to apply on remand, we briefly address this argument.

Hernandez-Perez's argument turns on the interaction of two BIA cases.  In the first, *Matter of Coelho*, the Board was presented with a motion to remand to prove rehabilitation after relief had been denied in part due to failure to prove rehabilitation.  20 I. & N. Dec. 464, 470–71 (B.I.A. 1992).  The Board described the governing standard by asking whether "the new evidence offered would likely change the result in the case." *Id.* at 473.

Several years later, in *In re L-O-G-*, a mother and daughter who had originally filed for and been denied asylum and withholding filed a motion to reopen to apply for suspension of deportation.  21 I. & N. Dec. 413, 413 (B.I.A. 1996) (en banc).  The Board explained that "where, as in suspension cases, ruling on a motion to reopen requires the exercise of judgment regarding eligibility for the relief sought, the Board historically has not required a conclusive showing that, assuming the facts alleged to be true, eligibility for relief has been established." *Id.* at 418–19.  The Board emphasized that it "should not prejudge the merits of a case" and so "decid[ed] only that there is a reasonable likelihood that the statutory requirements for the relief sought have been satisfied." *Id.* at 419.  *L-O-G-* "acknowledge[d] [the Board's] prior decisions holding that the moving party generally bears a heavy burden in seeking reopening of

proceedings," including *Coelho*, but explained that the petitioner in *Coelho* "had already had an opportunity to fully present and litigate his request for discretionary relief" and that the instant case did not present comparable "special, adverse considerations." *Id.* at 419–20.

Hernandez-Perez argues that, in distinguishing *Coelho*, *L-O-G-* created two distinct burdens of proof for motions to reopen, with a relatively heavier burden for motions involving claims that have already been litigated and a relatively lighter burden for motions presenting entirely new claims. According to Hernandez-Perez, his motion to reopen on the basis of a different hardship ground is analogous to an entirely new claim, and so the Board erred by stating that he "bears the heavy burden of showing that if proceedings were reopened with all the attendant delays, the new evidence offered would likely change the result in this case" and citing *Coelho*.

Hernandez-Perez does not cite any case, and we are aware of none, that interprets *L-O-G-* as either overruling *Coelho* or carving out a delineated exception to it. Board Members have cited the two cases side by side as support for a single statement of the standard. *See In re G-D-*, 22 I. & N. Dec. 1132, 1143 (B.I.A. 1999) (en banc) (Rosenberg, dissenting) (citing both *Coelho* and *L-O-G-* as support for the proposition that "[a] prima facie claim is one in which statutory eligibility has been demonstrated and reopening is likely to yield a different result"); *In re J-J-*, 21 I. & N. Dec. 976, 993 n.11 (B.I.A. 1997) (en banc) (citing both cases as support for the proposition that "the question before us is whether such evidence, together with that already in the record, could satisfy the applicant's burden of demonstrating a well-founded fear of persecution"). We have never cited *L-O-G-*, and some of our cases cite *Coelho* when describing the burden at the motion to reopen stage, without limiting that discussion to a certain category of cases. *See, e.g.*, *Reyna v. Lynch*, 631 F. App'x 366, 371 (6th Cir. 2015); *Mbaye v. Holder*, 369 F. App'x 688, 695 (6th Cir. 2010); *Lin v. Holder*, 364 F. App'x 236, 238 (6th Cir. 2010). Other circuits have cited *L-O-G-* to describe a movant's burden, *see, e.g.*, *Smith v. Holder*, 627 F.3d 427, 438 (1st Cir. 2010); *Kay v. Ashcroft*, 387 F.3d 664, 674 (7th Cir. 2004); *Burog-Perez v. INS*, 95 F. App'x 886, 888 (9th Cir. 2004), but, to our knowledge, none has held that the nature of the burden changes based on the type of application for relief, much less that the BIA erred by citing *Coelho*.

In light of this consistent interpretive history, *L-O-G-* is properly considered a clarification of how the *Coelho* standard applies in particular factual circumstances. As we have repeatedly emphasized, and as the Government acknowledges, prima facie evidence at the motion to reopen stage is evidence that "reveals a reasonable likelihood that the statutory requirements for relief [from removal] have been satisfied." *Foythong v. Holder*, 743 F.3d 1051, 1053 (6th Cir. 2014) (alteration in original) (quoting *Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1050 (6th Cir. 2007)); *see also Alizoti v. Gonzales*, 477 F.3d 448, 452 (6th Cir. 2007). The showing necessary to make a likelihood of success "reasonable" is, of course, fact specific—and one relevant fact is whether the claim has already been reviewed and found wanting. The Board conducted that fact-specific inquiry in *L-O-G-* when it considered the unusual facts of that motion "as a whole" and determined that it was "worthwhile to develop the extreme hardship issue further at a full evidentiary hearing." 21 I. &. N. Dec. at 422. It can conduct the same fact-specific analysis when applying *Coelho*.

The BIA therefore did not err in requiring Hernandez-Perez to present evidence that "would likely change the result in the case."

## III. CONCLUSION

For the foregoing reasons, we **DENY** the Government's motion to strike, **GRANT** the petition for review, and **REMAND** to the BIA for further proceedings consistent with this opinion.