**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 19a0619n.06

Case No. 19-3149

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| TAKHIR ASHIROVICH KHAYTEKOV, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | **FILED** Dec 16, 2019 DEBORAH S. HUNT, Clerk |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION AP- |
| WILLIAM P. BARR, Attorney General, | ) | PEALS |
| | ) | |
| Respondent. | ) | |

BEFORE: COLE, Chief Judge; SILER and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. In 2001, Takhir Ashirovich Khaytekov came to the United States from Uzbekistan on a temporary visa lasting six months. He never left. Six years later, authorities caught wind of his unauthorized presence and started proceedings to remove him. *See* 8 U.S.C. § 1227(a)(1)(B). In response, Khaytekov initially applied for asylum. After he married a U.S. citizen, he withdrew his asylum application and substituted an application asking for an adjustment of his status to that of a lawful permanent resident. *See id.* § 1255(a)

Khaytekov's misrepresentations derailed his adjustment-of-status application, as an immigration judge found that he lied about many things during his immigration proceedings. To stay in this country, for example, Khaytekov falsely claimed in his asylum application that he had been "brutally attacked" by "nationalist and fascist" groups in Uzbekistan. According to the judge,

Khaytekov's lies rendered him inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i), which, in turn, made him ineligible for adjustment of status under § 1255(a). Even if Khaytekov were eligible for adjustment of status, the judge continued, he would not merit that discretionary relief because the negative aspects of his case (his lies) outweighed any positive aspects.

Found inadmissible under § 1182(a)(6)(C), Khaytekov applied for a waiver of inadmissibility under § 1182(i)(1). The waiver would allow him to seek adjustment of status despite his lies if he could prove that his removal would cause his wife Angela "extreme hardship." Khaytekov argued she would suffer such hardship because she is disabled and he is her sole caregiver. The judge denied this waiver request on three grounds. Ground One: The judge found that Khaytekov had knowingly filed a frivolous asylum application, which rendered him "permanently ineligible" for benefits like an inadmissibility waiver. *Id.* § 1158(d)(6). Ground Two: The judge found that Khaytekov did not prove his eligibility for the waiver because he had not shown that his removal would cause Angela extreme hardship. To reach this result, the judge questioned whether Angela was truly disabled because her social-security application for disability benefits had been denied. Ground Three: The judge found that, even if Khaytekov were eligible for a waiver under § 1182(i)(1), his case did not warrant a favorable exercise of discretion. The judge again relied on Khaytekov's lies, describing him as "one of the most remarkably and demonstrably dishonest people with whom this Court has dealt in well over 30 years of experience on the bench."

Khaytekov appealed to the Board of Immigration Appeals. During the appeal he filed several motions, including a motion to remand for the immigration judge to consider new evidence showing that Angela had procured disability benefits; a motion to have a three-member panel decide his appeal; and a motion for cancellation of removal. The Board dismissed the appeal and denied the motions. It upheld the finding that Khaytekov had filed a frivolous asylum application,

2

which barred him from seeking an inadmissibility waiver under § 1182(i)(1). It also held that Khaytekov would not have been entitled to a waiver in any event. When doing so, the Board acknowledged Khaytekov's new evidence about his wife's disability benefits and so did not rely on the immigration judge's lack-of-hardship finding. Rather, the Board concluded that, even accounting for Angela's disability, Khaytekov did not merit a waiver when balancing the negative and positive aspects of his case.

In this court, Khaytekov alleges that the Board erred in the following ways: (1) by denying his motion to remand based on his new evidence; (2) by refusing to impanel a three-member panel; (3) by denying his motion to remand so that he could apply for cancellation of removal; and (4) by upholding the findings that he had filed a frivolous asylum application and was not credible.

1. *Motion to Remand for New Evidence*. Khaytekov moved the Board to remand so that the immigration judge could reconsider his request for an inadmissibility waiver under § 1182(i)(1) in light of new evidence (Angela's approval for disability benefits). We lack jurisdiction over this argument, but the reason why is quite complex.

Start with the jurisdictional basics. Congress has stripped courts of jurisdiction to consider many discretionary rulings of the Board of Immigration Appeals. *E.g.*, 8 U.S.C. § 1252(a)(2)(B). Two provisions bar courts from reviewing a decision denying the relief that Khaytekov seeks: a waiver of inadmissibility under § 1182(i)(1). Section 1252(a)(2)(B)(i) says that "no court shall have jurisdiction to review" "any judgment regarding the granting of relief under," among other sections, § 1182(i). Section 1182(i)(2) adds: "No court shall have jurisdiction to review a decision or action of the Attorney General regarding a waiver under paragraph (1)." These carveouts to our jurisdiction come with their own carveout: Congress clarified that courts retain jurisdiction to review "constitutional claims or questions of law" that the Board answers when deciding issues

covered by a jurisdictional bar. *Id.* § 1252(a)(2)(D). Under this framework, we would lack jurisdiction if Khaytekov had sought our review of the Board's discretionary balancing of the positive and negative aspects of his case or of any decision that he failed to establish hardship. Neither decision qualifies as a "question of law" under § 1252(a)(2)(D) and so both are subject to the jurisdictional bar. *See, e.g.*, *Ettienne v. Holder*, 659 F.3d 513, 517–19 (6th Cir. 2011) (hardship); *Addo v. Mukasey*, 267 F. App'x 442, 448–49 (6th Cir. 2008) (balancing); *see also Cospito v. Att'y Gen. of U.S.*, 539 F.3d 166, 170–71 (3d Cir. 2008).

Yet this petition presents a procedural twist. Khaytekov does not seek review of the denial of a *waiver* under § 1182(i)(1); he seeks review of the denial of a *motion to remand*. Federal courts have long treated those motions (which are filed before the Board's decision) like motions to reopen (which are filed after the Board's decision). *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 315 n.4 (6th Cir. 2018); *Pilica v. Ashcroft*, 388 F.3d 941, 945 n.3 (6th Cir. 2004); *see* 8 C.F.R. § 1003.2(c)(4). And a court has jurisdiction to review the Board's denial of a motion to reopen if the court would have jurisdiction over the underlying issue that an immigrant seeks to raise in that motion. *Kucana v. Holder*, 558 U.S. 233, 252–53 (2010). But what "if the court would lack jurisdiction over the . . . underlying" issue that an immigrant seeks to press? *Id.* at 250 n.17. The Supreme Court has reserved that jurisdictional question. *Id.*

We have answered the question for other Board actions that, like the denial of a waiver under § 1182(i), are subject to § 1252(a)(2)(B)(i). *Hernandez-Perez*, 911 F.3d at 315–16; *Pilica*, 388 F.3d at 945–48. For example, the denial of adjustment of status under § 1255(a) normally triggers that jurisdictional bar. And *Pilica* considered whether we had jurisdiction over the Board's denial of a motion to remand to allow an immigrant to apply for adjustment of status. 388 F.3d at 945–46. We started with the statutory text, recognizing that "[t]he question is whether the denial

of the motion to remand was a judgment 'regarding the granting of relief' under" the adjustment-of-status statute. *Id.* (quoting 8 U.S.C. § 1252(a)(2)(B)(i)). We then held that a motion to remand "that does not involve the consideration of relief on the merits should not be treated as 'regarding' the granting of relief" for purposes of § 1252(a)(2)(B)(i)'s text. *Id.* at 948. If, by contrast, the Board denied a motion to remand (or reopen) on merits grounds—because, for example, new evidence still did not show the required hardship for discretionary relief—*Pilica* suggested that we would lack jurisdiction. *Id.* at 947–48 (discussing *Rodriguez v. Ashcroft*, 253 F.3d 797, 800 (5th Cir. 2001)). Ultimately, *Pilica* held that we had jurisdiction because the immigrant in that case sought only an opportunity to apply for adjustment of status and there was no indication that the Board's unexplained denial of the motion rested on the merits of the immigrant's adjustment-of-status claim. *Id.* at 945, 948.

*Hernandez-Perez* clarified how *Pilica* applies when an immigrant seeks to remand (or reopen) a previously denied claim based on new evidence. 911 F.3d at 316. There, the Board denied an application for cancellation of removal under 8 U.S.C. § 1229b because the immigrant had not shown that his removal would cause extreme hardship to his daughter, a decision also triggering § 1252(a)(2)(B)(i)'s jurisdictional bar. *Hernandez-Perez*, 911 F.3d at 309–10. The immigrant then filed a motion to reopen with new evidence of hardship to his son, but the Board found that this new evidence "did not establish prima facie eligibility for cancellation of removal." *Id.* at 310. Despite that quasi-merits ruling, *Hernandez-Perez* held that we had jurisdiction to consider the denial. *Id.* at 315–16. We adopted the rule that courts "lack jurisdiction to review the denial of a motion to reopen or remand in a cancellation of removal case, unless the motion raised a new hardship ground not decided in the original decision." *Id.* at 316 (quoting *Ortiz-Cervantes v. Holder*, 596 F. App'x 429, 432 (6th Cir. 2015)). And the motion in *Hernandez-Perez* relied on a

5

new hardship ground (harm to the immigrant's son) different from the ground asserted in the original application (harm to the immigrant's daughter). *Id.*

While we found that we had jurisdiction in these two cases, their logic shows that we lack jurisdiction to review the denial of Khaytekov's motion to remand. Initially, though, we reserve one question about whether these cases apply here. To be sure, this case triggers the jurisdictional bar that *Pilica* and *Hernandez-Perez* interpreted (§ 1252(a)(2)(B)(i)) because that provision refers to inadmissibility waivers under § 1182(i)(1) too. But this case also triggers *another* jurisdictional bar (§ 1182(i)(2)) that uses different language. *Pilica* reasoned that § 1252(a)(2)(B)(i) did not preclude review of non-merits denials of motions to reopen or remand because its text refers to the merits by prohibiting our review of "any judgment regarding *the granting of relief*" under the identified sections. 8 U.S.C. § 1252(a)(2)(B)(i) (emphasis added); *Pilica*, 388 F.3d at 948. Section 1182(i)(2), by contrast, precludes review over "a decision or action of the Attorney General regarding *a waiver* under" § 1182(i)(1). 8 U.S.C. § 1182(i)(2) (emphasis added).

We need not decide whether this difference in language compels a different test because we lack jurisdiction even under *Pilica* and *Hernandez-Perez*. To begin with, the Board's decision "involve[d] the consideration of relief on the merits" of Khaytekov's waiver claim. *Pilica*, 388 F.3d at 948. Khaytekov's motion to remand sought to use new evidence about Angela's disability to overturn the immigration judge's decision that he had not shown the "extreme hardship" that § 1182(i)(1) requires. The Board acknowledged this new evidence in a footnote, but denied relief because Khaytekov was still not entitled to a waiver under the Board's discretionary balancing of positive and negative factors. We lack jurisdiction over such a merits-based discretionary balancing—whether undertaken for the initial appeal or for a motion to remand. *See Addo*, 267 F. App'x at 448–49. The opposite rule would allow immigrants to "make an end-run around the bar to

6

review" of the Board's discretionary denials simply by saving some new evidence for a motion to reopen or remand. *Ortiz-Cervantes*, 596 F. App'x at 433 (citation omitted).

Nor does *Hernandez-Perez* help Khaytekov. Both cancellation of removal (in *Hernandez-Perez*) and a waiver of inadmissibility (in this case) are discretionary forms of relief that require an immigrant to show that removal will cause extreme hardship to a family member. *Compare* 8 U.S.C. § 1229b(b)(1)(D), *with id.* § 1182(i). But, unlike the immigrant in *Hernandez-Perez*, Khaytekov moved the Board to remand on the *same* hardship ground (his wife's disability) that he asserted in his original application. His motion does not address a ground "so distinct from that considered previously as to make the motion . . . a request for new relief, rather than for reconsideration of a prior denial." *Hernandez-Perez*, 911 F.3d at 316 (citation omitted).

In sum, whether analyzed under § 1182(i)(2) or under § 1252(a)(2)(B)(i), we lack jurisdiction to review the denial of Khaytekov's motion to remand.

2. *Motion for Three-Member Panel*. Khaytekov next claims that the Board wrongly refused to appoint a three-member panel to decide his appeal. We have jurisdiction to review the Board's decision to decide an appeal with one member rather than a three-member panel. *Gafurova v. Whitaker*, 911 F.3d 321, 330–31 (6th Cir. 2018). But *Gafurova* forecloses Khaytekov's claim. Under regulations governing Board procedure, cases "may only be assigned for review by a three-member panel" in certain settings. 8 C.F.R. § 1003.1(e)(6). These regulations, by contrast, place *no* limits on a single member deciding an appeal. This dichotomy led *Gafurova* to hold that a "single-member assignment may be made for any stated reason" or "for no stated reason at all." 911 F.3d at 331. We thus found that the Board did not abuse its discretion when it denied a request for a three-member panel without explanation. *Id.* So too here. As in *Gafurova*, the Board summarily denied a request for a three-member panel. "Despite the lack of any explanation . . . the

Board did not abuse its discretion because its assignment of a single member was consistent with the requirements of its internal operating rules." *Id.*

3. *Motion to Remand to Apply for Cancellation of Removal*. Khaytekov also challenges the Board's denial of his motion to remand to allow him to apply for cancellation of removal under 8 U.S.C. § 1229b(b). While a denial of cancellation of removal falls within § 1252(a)(2)(B)(i)'s jurisdictional bar, *Pilica* suggests that we would have jurisdiction over the denial of a motion to remand that seeks to raise a previously unavailable claim for relief. 388 F.3d at 945–48. Regardless, Khaytekov raises a pure question of law, so we have jurisdiction to review his claim under 8 U.S.C. § 1252(a)(2)(D).

At the outset, Khaytekov correctly notes that the Board mistakenly suggested that he did not, in fact, seek cancellation of removal. "But even when the agency's reasoning was inadequate, its decision may be upheld on the basis of harmless error if the petitioner's prospects are otherwise so weak that there is no 'reason to believe that . . . remand might lead to a different result.'" *Japarkulova v. Holder*, 615 F.3d 696, 701 (6th Cir. 2010) (citation omitted). In this case, we have already rejected the precise legal argument that Khaytekov raises to assert that he is eligible for cancellation of removal. So a remand on this issue would serve no purpose.

To be eligible for cancellation of removal, an immigrant must be "physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of" the application for relief. 8 U.S.C. § 1229b(b)(1)(A). Under what is known as the "stop-time" rule, an immigrant must have satisfied this 10-year requirement by the time the government serves the immigrant with a valid "notice to appear." *Id.* § 1229b(d)(1). A different section states that a "notice to appear" should include "[t]he time and place at which [removal] proceedings will be held." *Id.* § 1229(a)(1)(G)(i). *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), held that a notice to

8

appear that does not include this information does not suffice to trigger the "stop-time" rule. *Id.* at 2110. The initial notice sent to Khaytekov had the same defect identified in *Pereira*. But before Khaytekov had been in the United States for 10 years, the government sent a *second* notice telling him of the time and place of his removal proceedings. He thus would be ineligible for cancellation of removal if the combination of the two notices triggered the stop-time rule. Khaytekov responds that, under the statutory scheme, the government cannot trigger the stop-time rule in this "multi-notice" fashion.

Unfortunately for Khaytekov, we rejected this argument after he filed his opening brief. *Garcia-Romo v. Barr*, 940 F.3d 192, 199–203 (6th Cir. 2019). *Garcia-Romo* held that the government can trigger the stop-time rule by sending a follow-up communication with information missing from an original notice. *Id.* Khaytekov's reply brief candidly admits that *Garcia-Romo* forecloses his argument before this panel. Because he was not present in this country for 10 years at the time of the second notice, he is not eligible to seek cancellation of removal.

4. *Frivolousness and Credibility Findings.* Khaytekov lastly challenges the Board's findings that he filed a frivolous asylum application and was not credible. Even if we had jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to consider his arguments, we need not address them. As noted, we lack jurisdiction to review the Board's denial of Khaytekov's request for a waiver of inadmissibility based on its discretionary balancing of the negative and positive aspects of his case. *Addo*, 267 F. App'x at 448–49. That balancing would doom Khaytekov's requests for relief even if we reversed the Board's separate findings that he filed a frivolous asylum application and was not credible. Any reversal of those findings thus would not change the outcome of Khaytekov's applications for adjustment of status and a waiver of inadmissibility. So we need not reach these issues because they are "not necessary for our disposition of the petition." *Dealmonte-Castillo v.*

*Sessions*, 737 F. App'x 282, 285 (6th Cir. 2018); *see also Dinou v. U.S. Att'y Gen.*, 451 F. App'x 840, 842 n.3 (11th Cir. 2012); *Ozdemir v. INS*, 46 F.3d 6, 8 (5th Cir. 1994).

All told, we dismiss Khaytekov's petition in part and deny it in part.