NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0052n.06

Nos. 24-3703/25-3161

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 27, 2026
KELLY L. STEPHENS, Clerk

CARLOS ORTA MARTINEZ, )
)
    Petitioner, )
)
v. )
)
PAMELA J. BONDI, Attorney General, )
)
    Respondent. )
)

ON PETITION FOR REVIEW OF
ORDERS OF THE BOARD OF
IMMIGRATION APPEALS

OPINION

---

**Before: MOORE, CLAY, and WHITE, Circuit Judges.**

The court delivered a PER CURIAM opinion. MOORE, J. (pp. 21–25), delivered a separate opinion dissenting in part.

**PER CURIAM.** Petitioner Carlos Orta Martinez seeks review of a final order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") decision denying his application for cancellation of removal (No. 24-3703) and the BIA's final order denying his motion to reopen (No. 25-3161). Orta Martinez argues that in denying his application for cancellation of removal, the BIA erroneously determined that he had not established that his removal would result in exceptional and extremely unusual hardship to his United States-citizen children. He next argues that the BIA abused its discretion in denying his motion to reopen because he presented new, material evidence of the hardship that his children will suffer if he is removed. For the reasons set forth below, we **DENY** both petitions for review.

## I. BACKGROUND

Orta Martinez is a Mexican citizen who last entered the United States in 2006. No. 25-3161 Administrative Record ("A.R.") at 360 (Hr'g Tr. at 17); A.R. at 761 (Amendments to EOIR 42-B Appl. at 2).[1] Orta Martinez and his wife, who is also a native of Mexico without legal status, are from Aporo, a small town in Michoacán, Mexico. A.R. at 364, 367 (Hr'g Tr. at 21, 24). He and his wife have two children, A.C. and C.G., who were born in this country and are United States citizens. A.R. at 364 (Hr'g Tr. at 21); A.R. at 753–54 (Birth Certificates). Orta Martinez and his wife have an extensive family network in the United States, including their children's "grandparents, . . . aunts, uncles, and cousins." A.R. at 320 (IJ Op. at 4). Orta Martinez's father lives in Aporo, as do his wife's brother and sister. A.R. at 367, 380 (Hr'g Tr. at 24, 37).

Orta Martinez has worked for the same construction company as a cement finisher since 2006 and works forty hours per week "plus overtime," making $27 per hour. A.R. at 363 (Hr'g Tr. at 20); A.R. at 453 (Letter from Employer). Orta Martinez's wife stays home to care for the children. A.R. at 364 (Hr'g Tr. at 21). He owns a home in Michigan where the family lives with his mother-in-law, who is a lawful permanent resident and does not work outside of the home. A.R. at 363, 376 (Hr'g Tr. at 20, 33). Orta Martinez has filed tax returns since 2006. A.R. at 462–90 (Tax Returns). A.C. and C.G. are both good students and have some verbal fluency in Spanish, but they still "get confused with certain words" and cannot read or write in Spanish. A.R. at 369, 374 (Hr'g Tr. at 26, 31). Orta Martinez does not have any disqualifying criminal history and has received only "two or three" traffic tickets while in the United States, for which he paid the required fines. *Id.* at 359, 386 (Hr'g Tr. at 16, 43).

---

[1] Unless indicated otherwise, our citations to the Administrative Record refer to the Administrative Record in No. 25-3161.

In 2019, the Department of Homeland Security initiated removal proceedings against Orta Martinez, alleging that he was removable as a noncitizen present in the United States without legal status. A.R. at 789 (Notice to Appear at 1). Orta Martinez conceded that he was removable but applied for cancellation of removal based on the exceptional and extremely unusual hardship his children would face if he were removed. A.R. at 736–37 (Appl. for Cancellation of Removal at 1–2). The IJ held a merits hearing at which Orta Martinez, his mother-in-law, and A.C. testified. *See* A.R. at 347 (H'rg Tr. at 1). Orta Martinez testified that A.C. and C.G. are generally healthy, although his potential removal has caused them emotional distress. A.R. at 374 (Hr'g Tr. at 31). A.C.'s grades suffered due to Orta Martinez's detention in 2019, and she experienced "ongoing distress and anxiety that ha[s] been interfering with her quality of life and ability to focus on learning at school" and that resulted in her receiving counseling. A.R. at 457 (Letter from LMSW-Clinical Mental Health Specialist). At the time of Orta Martinez's hearing, A.C. was no longer in counseling. A.R. at 374 (Hr'g Tr. at 31).

Orta Martinez's wife and children will move to Mexico with him if he is removed from the United States. *Id.* at 365–66 (Hr'g Tr. at 22–23). Orta Martinez and his family will initially live with his father in Aporo because they do not have a house in Mexico. *Id.* at 366–67 (Hr'g Tr. at 23–24). Orta Martinez testified that he is concerned about his children's adjustment to life in Mexico, that they may be bullied, and that their lack of Spanish-language abilities will result in them being held back in school. *Id.* at 369–70 (Hr'g Tr. at 26–27). Orta Martinez also expressed concern about his ability to support his family financially in Mexico and that the high rate of crime in Mexico could result in them experiencing violence. *Id.* at 373, 375 (Hr'g Tr. at 30, 32). Orta Martinez has assets worth around $100,000 in the United States, but he is worried that if he sold these assets, he could not use the money to start a successful business in Mexico because criminal

organizations extort business owners for money via threats of violence. *Id.* at 378–79 (Hr'g Tr. at 35–36).

The IJ ultimately determined that Orta Martinez was not eligible for cancellation of removal because his United States-citizen children A.C. and C.G. would not suffer "exceptional and extremely unusual hardship" from his removal. A.R. at 319, 323 (IJ Op. at 3, 7). In making this determination, the IJ found that all of the witnesses who testified at the hearing were "credible." *Id.* at 318 (IJ Op. at 2). The IJ noted that A.C. and C.G. had visited Aporo three times, including in 2021 and 2022, and that upon Orta Martinez's removal, the family would live with Orta Martinez's father in Aporo, where the family of Orta Martinez's wife also resides. *Id.* at 320 (IJ Op. at 4). The IJ found that A.C.'s and C.G.'s adjustment to life in Mexico "causes some concerns, particularly for the father in the event that they are placed in lower grades due to their lack of Spanish language fluency." *Id.* Despite this, the IJ concluded that "it ha[d] not been established that there is a wholesale lack of educational opportunities for the children in Mexico." *Id.* at 321 (IJ Op. at 5). The IJ discussed A.C.'s counseling but noted that she was no longer receiving counseling and that she and C.G. "have no known health problems, and they evidently do well in school with no special needs." *Id.* at 320 (IJ Op. at 4). The IJ determined that there was "little reason to believe that the qualifying relatives will have any different care from their parents in Mexico, especially considering that their grandmother, who currently lives with them, will likely go with them as well." *Id.* at 321 (IJ Op. at 5).

The IJ found "that [Orta Martinez] will earn far less [in Aporo] than he earns in the United States" but that "[h]e has transferrable skills" from his construction work in the United States. *Id.* The IJ also determined Orta Martinez had not shown "that he will be unable to find any job" and noted that "[h]is siblings . . . work in Mexico" and that he had not shown "that he has no place to

live in Mexico." *Id.* Ultimately, the IJ concluded that "[t]his will be a difficult transition, and there will be hardship, but it has not been shown to be beyond that which is to be normally expected" under BIA precedent. *Id.*

The IJ then noted that the children "are not required by this order to return to Mexico" and that their move would be "voluntary." *Id.* at 321 (IJ Op. at 5). The IJ conducted another hardship analysis considering the alternative that the children would ultimately remain in their home that "is paid for" in the United States with their mother and their grandmother, and the IJ came to the same conclusion. *Id.* at 321–23 (IJ Op. at 5–7). Finally, the IJ granted Orta Martinez voluntary departure because "[h]e has been a hard worker and has filed his tax returns. In the event that he can utilize voluntary departure to perhaps return to the United States legally in the future, [that is] a great utility for his prospects of rejoining his family in the" United States. *Id.* at 323–24 (IJ Op. at 7–8). Orta Martinez timely appealed the decision to the BIA. *See* 8 C.F.R. § 1003.38(b); A.R. at 293 (Notice of Appeal at 1). The BIA affirmed the IJ's decision without opinion or analysis. A.R. at 270 (BIA Order at 1).

On October 17, 2024, Orta Martinez timely filed a motion to reopen and argued that he provided "new and previously unavailable evidence of the exceptional and extremely unusual hardship" A.C. and C.G would face if he is removed. *See* 8 C.F.R. § 1003.2(c); A.R. at 18 (Mot. to Reopen at 1). In the motion, Orta Martinez informed the BIA that A.C. and C.G. had seen psychologists and counselors since the IJ's decision was issued due to their increasing distress from his pending removal. A.R. at 24–26 (Mot. to Reopen at 7–9). Orta Martinez submitted evaluations of A.C. and C.G. by several mental-health professionals. A.R. at 41–64 (Psychological Evaluations).

Next, Orta Martinez provided evidence that A.C., then a junior in high school, was eligible to receive two scholarships to attend in-state universities in Michigan if she remains in the state, and information that in Michoacán, "there are many schools without teachers in front of a group, causing students to have little or no academic preparation." A.R. at 26–28 (Mot. to Reopen at 9–11) (internal quotation marks omitted). Additionally, the transition to the school system in Michoacán is difficult for United States citizens, and "especially difficult in rural areas." *Id.* at 27 (Mot. to Reopen at 10) (internal quotation marks omitted). To support this, Orta Martinez submitted letters discussing A.C.'s scholarships and the low rate of high-school graduation in Aporo, academic articles discussing the difficulty United States-citizen children face adjusting to school in Mexico, and a letter from a teacher in Mexico discussing the state of education in Mexico and Michoacán. A.R. at 68 (Letter from A.C.'s Teacher); A.R. at 76–77 (Letter from Family Member at 1–2); A.R. at 70 (Letter from Federal Teacher in Mexico); A.R. at 185, 191 (Report entitled "The Psychosocial Impact of Detention and Deportation on United States Migrant Children and Families" at 1, 7).

Orta Martinez also submitted "new research and studies concerning the serious emotional and psychological harm children suffer when their parents are removed or even at risk of removal." A.R. at 28–31 (Mot. to Reopen at 11–14); *see also* A.R. at 166–268 (Academic and News Articles on the Effect of Deportation on Children). Finally, Orta Martinez argued that "[s]ince [his] hearing, conditions have significantly worsened in Mexico" and that his permanent inadmissibility if removed should be considered. A.R. at 31–33 (Mot. to Reopen at 14–16). To support this, he submitted a letter from the Executive Director of the Hispanic Latino Commission of Michigan detailing the dangerous conditions and lack of economic opportunity in Aporo, a Travel Advisory issued by the State Department that warned United States citizens not to travel to Michoacán due

to "crime and kidnapping" and that limited where United States Government personnel can travel in the state, a State Department report detailing "[s]ignificant human rights issues" in Mexico and information about the conditions in Michoacán, and reports from Human Rights Watch and Amnesty International. A.R. at 66–67 (Letter from Executive Director at 1–2); A.R. 95, 106–07 (Travel Advisory at 1, 13–14); A.R. at 116, 132, 145 (State Department Report on Mexico at 1, 17, 30); A.R. 151, 153 (Human Rights Watch Report at 1, 3); A.R. 156 (Amnesty International Report).

The BIA denied Orta Martinez's motion to reopen on the ground that he failed to establish "prima facie eligibility for cancellation of removal." A.R. at 3–5 (BIA Order Mot. to Reopen at 1–3). The BIA also declined to exercise its sua sponte authority to reopen the proceedings. *Id.* at 5 (BIA Order Mot. to Reopen at 3). The BIA stated that Orta Martinez had submitted "evidence of psychological, academic, and financial hardship to his qualifying relatives related to the respondent's removal that we previously considered in reviewing the respondent's application for cancellation of removal." *Id.* at 4 (BIA Order Mot. to Reopen at 2). The BIA highlighted the psychological evaluations of A.C. and C.G., which it determined did not demonstrate exceptional or extremely unusual hardship because the "reports . . . indicate progress in [A.C. and C.G.'s] wellbeing resulting from their therapeutic treatments and . . . the respondent has considerable assets and transferrable skills to assist in the[ir] continuing care." *Id.* The BIA concluded that, "[a]fter care review of the entire record evidence," Orta Martinez had "not provided any evidence or argument of heightened hardship to his United States Citizen children that is beyond that which would normally be expected to occur when a close family member is removed." *Id.*

Orta Martinez timely petitioned this court for review of the BIA's orders. *See* 8 U.S.C. § 1252(b); No. 25-3161 Petition for Review; No. 24-3703 Petition for Review.

## II. DISCUSSION

### A. Jurisdiction

We have jurisdiction to review the BIA's final determination that Orta Martinez did not show "exceptional and extremely unusual hardship" under 8 U.S.C. § 1252(a)(2)(D). *Wilkinson v. Garland*, 601 U.S. 209, 212 (2024). We likewise have jurisdiction to review the BIA's denial of his motion to reopen his cancellation proceedings. *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 315 (6th Cir. 2018). Our review, however, is limited to questions of law and "[t]he application of [the] statutory legal standard . . . to an established set of facts," *Wilkinson*, 601 U.S. at 212, because we lack jurisdiction to review questions of fact, *Patel v. Garland*, 596 U.S. 328, 333 (2022); *Galvez-Bravo v. Garland*, 119 F.4th 1038, 1040 (6th Cir. 2024).

In a footnote in his brief, Orta Martinez asserts that the Notice to Appear he received was defective because it did not include the time and date of his hearing. Pet'r Br. at 5 n.3. He was subsequently provided with a Notice of Hearing, which provided the time and date of the hearing. A.R. at 788 (Notice of Hr'g at 1). Under our precedent, because the Notice of Hearing provided the relevant date and time, the omission of that information from the Notice to Appear did not deprive the IJ, or this court, of jurisdiction. *Hernandez-Perez*, 911 F.3d at 310–15; *Santos-Santos v. Barr*, 917 F.3d 486, 490–91 (6th Cir. 2019).[2]

---

[2] Two points regarding *Hernandez-Perez* are worth noting here. First, *Hernandez-Perez* was decided prior to the Supreme Court's decision in *Loper Bright*, which held that courts should no longer apply *Chevron* deference when interpreting statutes. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024). But that does not affect the precedential weight of *Hernandez-Perez*, because we applied *Auer* deference to the agency's interpretations of its own regulations in reaching our decision there. 911 F.3d at 310–15. "*Auer* . . . remain[s] good law" after *Loper Bright*, *United States v. Prather*, 138 F.4th 963, 975 (6th Cir. 2025), and therefore so does our holding in *Hernandez-Perez*. Second, our sibling circuits are split on whether the requirement that the Notice to Appear provide certain information is jurisdictional or only a mandatory claims-processing rule. *Compare United States v. Bastide-Hernandez*, 39 F.4th 1187, 1190–94 (9th Cir. 2022) (en banc); *United States v. Cortez*, 930 F.3d 350, 358–362 (4th Cir. 2019); *Ortiz-Santiago v. Barr*, 924 F.3d 956, 963–66 (7th Cir. 2019), *with Banegas Gomez v. Barr*, 922 F.3d 101, 110–12 (2d Cir. 2019); *Ali v. Barr*, 924 F.3d 983, 985–86 (8th Cir. 2019). *Hernandez-Perez* discusses the requirement as a jurisdictional one, even though it did not analyze whether the requirement was a mandatory claims-processing rule. We follow suit and do so here too because it has no effect on the outcome of this case.

## B. Cancellation of Removal

The BIA has discretion to cancel removal of a noncitizen if it finds that the noncitizen has met certain statutory criteria. *Wilkinson*, 601 U.S. at 212. The relevant criteria are: (1) the applicant "'has been physically present in the United States for a continuous period of not less than 10 years' before [they] appl[y]; (2) [they] 'ha[ve] been a person of good moral character during such period'; (3) [they] ha[ve] not been convicted of certain criminal offenses; and (4) [they] 'establish[] that removal would result in exceptional and extremely unusual hardship to [their] spouse, parent, or child,' who is a U.S. citizen or lawful permanent resident." *Id.* at 213 (quoting 8 U.S.C. § 1229b(b)(1)). The only contested element in this case is whether Orta Martinez's two children, who are United States citizens, would experience "exceptional and extremely unusual hardship" from his removal. *See* Pet'r Br. at 21; Resp't Br. at 22–34.

When "the BIA adopts the IJ's reasoning" without issuing its own opinion, as it did here in its July 2024 order, we "review[] the IJ's decision directly to determine whether the decision of the BIA should be upheld on appeal." *Fang Huang v. Mukasey*, 523 F.3d 640, 649 (6th Cir. 2008) (quoting *Gilaj v. Gonzales,* 408 F.3d 275, 282–83 (6th Cir. 2005) (citation omitted)). We review de novo legal conclusions as to the meaning of "exceptional and extremely unusual hardship." *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 420–21 (6th Cir. 2024). The application of the law to facts is a "mixed question of law and fact" that we review "deferential[ly]." *Id.* at 423. The degree of deference, however, is an open question in this circuit. *Id.* The government urges us to hold that we review the IJ's decision for "substantial evidence." Resp't Br. at 14–22. We need not decide that question here because under any standard of deferential review, the IJ did not err in finding that Orta Martinez's children would not suffer "exceptional and extremely unusual hardship" from his removal.

Orta Martinez first argues that the legal standard the IJ applied in determining whether there was "exceptional and extremely unusual hardship" in this case is contrary to the standard this court set out in *Moctezuma-Reyes*, 124 F.4th at 422. Pet'r Br. at 22–25. The standard the IJ applied was established by the BIA in *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 65 (BIA 2001). *Monreal-Aguinaga* held that "'exceptional and extremely unusual hardship" requires the noncitizen "to establish that his qualifying relatives would suffer hardship that is substantially different from, or beyond, that which would normally be expected from the deportation of a[] [noncitizen] with close family members here." *Id.* In *Moctezuma-Reyes*, we held that "'exceptional and extremely unusual hardship' means hardship sustained by a deported [noncitizen's] qualifying relatives that's significantly different from or greater than the hardship that a deported [noncitizen's] family normally experiences." 124 F.4th at 422. We explained that the baseline used to assess the type and degree of hardship to the qualifying relative "is the hardship associated with all deportations," and that "[o]rdinary deportations create hardship [to qualifying relatives] . . . like the loss of financial prospects, separation from loved ones, and reduced educational opportunities." *Id.* And we concluded that there is "little daylight between our interpretation of the statute and that of the BIA in *Monreal*." *Id.*

Orta Martinez argues that *Monreal-Aguinaga* uses the "wrong baseline point of comparison" in the analysis. Pet'r Br. at 23. Instead, he continues, the BIA should compare the hardship in the present case "not [with] other native-born [United States] citizen children who could lose a parent to removal, but rather [with] the hardship expected from *any* removal." *Id.* This prejudices "applicants like" Orta Martinez, the argument goes, because it means the IJ could not consider the fact that A.C. and C.G. have "spent their whole lives in this country" even though

citizen children of other noncitizens facing removal may not have, and that some other noncitizens are removed to "stable English-speaking Western countries like Canada." *Id.* at 24–25.

*Monreal-Aguinaga*'s holding that the harm must be "substantially different from, or beyond, that which would normally be expected from the deportation of a[] [noncitizen] with close family members here" does not improperly instruct IJs and the BIA to consider the wrong baseline point of comparison. *Monreal-Aguinaga*, 23 I. & N. Dec. at 65. Instead, it instructs them to consider the hardship that is inherent in all removals and compare that to the hardship the qualifying family members will experience in the case at hand. The factors the BIA considers in this analysis include, among others, the noncitizen's "family ties in the United States and abroad[] [and] length of residence in this country" to the extent this affects their qualifying family members, and the qualifying relatives' "ages, health, and circumstances." *Id.* at 63–64. These factors allow IJs and the BIA to consider the facts that the qualifying relatives have lived in the United States for their entire lives even though not all qualifying relatives have, and that not all noncitizens are removed to non-English speaking countries.

To be sure, in *Monreal-Aguinaga*, the BIA also stated that the hardship must be "substantially beyond that which would ordinarily be expected to result from *the* [noncitizen's] deportation." *Id.* at 56 (emphasis added). We do not believe, however, that this slight variation in language instructed the BIA to consider the wrong baseline point of comparison. And in *In re Andazola-Rivas*, 23 I. & N. Dec. 319 (BIA 2002), another case cited by the IJ, the BIA stated that hardship must be assessed "by comparing it to the hardship others might face" and compared the hardship that the noncitizen's family members face in that case to the hardship "that would normally be expected upon removal to a less developed country." *Id.* at 323–24. That is on all fours with the standard in *Moctezuma-Reyes*, in which we stated that "as

compared to other deportations, many severe hardships resulting from deportation aren't rare, but expected—like the loss of financial prospects, separation from loved ones, and reduced educational opportunities." 124 F.4th at 422. It also squares with the reality that most removals and returns from the United States involve citizens of less economically developed countries according to data from the Office of Homeland Security Statistics from 2014 to 2024. *See* OFF. OF HOMELAND SEC. STATS., Immigr. Enf't and Legal Processes Monthly Tables—November 2024, https://ohss.dhs.gov/topics/immigration/immigration-enforcement/monthly-tables#table-data-heading. Hardships that are common for removals to those countries, such as "the loss of financial prospects . . . and reduced educational opportunities" will therefore not, on their own, be sufficient to show the qualifying relative will suffer "hardship . . . that's significantly different from or greater than the hardship that a deported [non-citizen's] family normally experiences." *Moctezuma-Reyes*, 124 F.4th at 422.

Further support for this conclusion can be found in *Moctezuma-Reyes*. The petitioner in that case argued that *Monreal-Aguinaga* incorrectly interpreted the statute by "assess[ing] abnormality by way of considerations that are 'decidedly normal in nature,' like family ties [and] how long the [noncitizen] has been in the United States." 124 F.4th at 423. We rejected this argument and held that the BIA's interpretation in "*Monreal*[-*Aguinaga*] squares with the best reading of the statute" because it properly instructs the BIA "to note the sorts of considerations that contribute to hardship in every removal and to then assess how a particular [noncitizen's] situation maps onto those considerations." *Id.* at 4223.

The "exceptional and extremely unusual" standard is demanding, and scholars have called on Congress to amend it. *See, e.g.*, Daisy J. Ramirez, Comment, *No Soy De Aquí, Ni Soy De Allá: U.S. Citizen Children Are Paying the Price for Our Nation's Broken Immigration System*, 25

SCHOLAR: ST. MARY'S L. REV. RACE & SOC. JUST. 369 (2023); Jill E. Family, *The Future Relief of Immigration Law*, 9 DREXEL L. REV. 393 (2017); David B. Thronson, *Entering the Mainstream: Making Children Matter in Immigration Law*, 38 FORDHAM URB. L.J. 393 (2010); Bridgette A. Carr, *Incorporating A "Best Interests of the Child" Approach into Immigration Law and Procedure*, 12 YALE HUM. RTS. & DEV. L.J. 120 (2009). Nonetheless, we are bound by our precedent that shows the IJ did not apply an incorrect legal standard in this case.

Orta Martinez next argues that the IJ "committed legal error" by failing to consider "whether the cumulative hardship to both children rose to the level of exceptional and extremely unusual." Pet'r Br. at 26. This challenge fails because the IJ's opinion demonstrates that it considered the hardship evidence in the aggregate. The opinion "indicated that the factors must be considered in the aggregate." *Guzman Herrera v. Garland*, No. 22-3985, 2023 WL 3414447, at \*4 (6th Cir. May 12, 2023); *see* A.R. 319, 323 (IJ Op. at 3, 7) ("The [IJ] has weighed all evidence of the record, individually and cumulatively" and "has considered, in this analysis, all aspects individually and in the aggregate."). The IJ also mentioned evidence relevant to both children, such as A.C.'s counseling and how both children would struggle with "language barriers" because they have "limited Spanish language verbal fluency and almost no Spanish language written or reading ability." A.R. 320 (IJ Op. at 4); *see Guzman Herrera*, 2023 WL 3414447, at \*4 (noting that the IJ's consideration of evidence related to both children demonstrates that "the IJ did in fact weigh the evidence of hardship in the aggregate"). Finally, "[t]he language of the [IJ's] opinion also suggests that it considered the factors cumulatively." *Guzman Herrera*, 2023 WL 3414447, at \*4. For example, the IJ stated that "[t]he [IJ] has little reason to believe that the qualifying relatives will have any different care from their parents in Mexico, especially considering that their grandmother, who currently lives with them, will likely go with them as well" and "[t]here has

been no showing here that the children would be entirely without education." A.R. 321 (IJ Op. at 5); *see Guzman Herrera*, 2023 WL 3414447, at *4 (noting the same about the following language: "[w]hile the respondent's children will undoubtedly suffer some financial and emotional hardship upon the respondent's removal, . . . the record does not reflect that *these* hardships will be so unusual or severe" (emphasis in original)). The IJ applied the correct legal standard and evaluated the evidence cumulatively.

Finally, Orta Martinez argues that the IJ erred in concluding that he had not shown A.C. and C.G. would suffer "exceptional and extremely unusual hardship." Pet'r Br. at 27–31. But we have held that such difficulties that A.C. and C.G. will face in Mexico, as hard as they may be, do not amount to "exceptional and extremely unusual hardship." Specifically, we have held that even though "the economic conditions and financial opportunities in Mexico are not equal to the opportunities . . . in the United States," which will result in the qualifying relatives' "standard of living . . . declin[ing]," "[f]inancial hardship is within the realm of expected hardship." *Tolentino-Hernandez v. Garland*, No. 20-4021, 2021 WL 4782689, at *3 (6th Cir. Oct. 13, 2021). We have likewise held that the "limited educational opportunities in Mexico" do not establish the requisite hardship, *id.*, and neither does "emotional difficult[y]" from removal, *Moctezuma-Reyes*, 124 F.4th at 423.

Orta Martinez's main contention as to why this determination was erroneous is that A.C. and C.G. are in their "critical teenage years," have spent their "whole lives in this country," and have limited Spanish language abilities. Pet'r Br. at 31. But this too fails under our caselaw because we have held that "trouble assimilating in a new country" is not exceptional hardship, even when the children had lived in the United States their whole lives, were in their teenage years,

and had limited Spanish language abilities. *Lopez-Soto v. Garland*, 857 F. App'x 848, 850, 854–55 (6th Cir. 2021).

We, like the IJ, are sympathetic to the hardship that removal will cause Orta Martinez and his family. A.R. at 428 (Hr'g Tr. at 85) ("This [is] a . . . sympathetic case). Despite this, we are "[c]onstrained by precedent and by our immigration laws as they now exist." *Lopez-Soto*, 857 F. App'x at 850. Until Congress "reform[s]" "the immigration system . . . individuals like" Orta Martinez, "who ha[v]e resided [and worked] in this country for" nearly twenty years, "paid [their] federal incomes taxes[,] . . . committed no crimes other than driving" infractions, purchased a home, and otherwise positively contributed to their communities, "remain[] subject to removal to [the] country from which [they] fled." *Id.* Accordingly, the BIA did not err in affirming the IJ's decision denying Orta Martinez's application for cancellation of removal.

## C. Motion to Reopen

As a preliminary matter, the government contends that Orta Martinez "waived"[3] his arguments on the denial of his motion to reopen because this section of his appellate brief is "copied virtually verbatim from his motion to reopen to the Board." Resp't Br. at 39–40. Admittedly, large portions of the brief are virtually identical to Orta Martinez's motion to reopen. *Compare* A.R. at 23–35 (Motion to Reopen at 6–18), *with* Pet'r Br. at 32–50. Orta Martinez's brief, however, addresses relevant legal authorities, contains appropriate citations to the administrative record before this court, and develops certain arguments further. *See, e.g.*, Pet'r Br. at 38–39 (further developing argument on the inappropriately high threshold used by the BIA and citing "*Martinez v. Bondi*, __ F.4th __ at * 16-17 (1st Cir. 2025)"); *id.* at 32 (citing "*Dada v.*

---

[3] The proper label for this is forfeiture, not waiver. *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022) ("A waiver occurs when a party intentionally abandons a known right," but "[a] forfeiture occurs when a party fails to timely assert a claim, even if the party does so unintentionally." (citations omitted)).

*Mukasey*, 128 S. Ct. 2307, 2317-19 (2008) [and] *Kucana v. Holder*, 558 U.S. 233, 242 (2010)").

That does not constitute forfeiture, especially since the brief discusses topics that are directly

relevant to our review.

"[W]e review the BIA's denial of a motion to reopen for an abuse of discretion." *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006). "The BIA abuses its discretion only when its determination was made 'without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Lopez v. Garland*, 990 F.3d 1000, 1002 (6th Cir. 2021) (quoting *Thompson v. Lynch*, 788 F.3d 638, 642 (6th Cir. 2015)). "Because of the strong public interest in the finality of immigration proceedings, motions to reopen are generally disfavored." *Elgebaly v. Garland*, 109 F.4th 426, 436 (6th Cir. 2024) (internal quotation marks omitted).

Orta Martinez argues that the BIA abused its discretion in denying his motion to reopen because he offered new, material evidence detailing his children's "psychological and emotional harm," "[c]omplete loss of meaningful educational opportunities," the "[i]mpact on U.S.-born children when a parent is removed," and "[c]onditions in Mexico." Pet'r Br. at 33–44. But a "motion to reopen is properly denied where the motion does not introduce previously unavailable material evidence." *Sunarto v. Mukasey*, 306 F. App'x 957, 962 (6th Cir. 2009) (quoting *INS v. Abudu*, 485 U.S. 94, 97–98 (1988)). None of the evidence submitted by Orta Martinez is previously unavailable material evidence under our caselaw. In support of his cancellation of removal, Orta Martinez already argued and presented evidence conveying that his children will experience psychological and emotional harm, a loss of educational opportunities, a negative impact because of his removal, and worse conditions in Mexico. And, as stated above, the IJ

already properly determined that such concerns do not show "exceptional and extremely unusual hardship" under 8 U.S.C. § 1252(a)(2)(D). *Wilkinson*, 601 U.S. at 212 (2024).

To be sure, much of the evidence that Orta Martinez submitted in support of his motion to reopen pre-dated the BIA's July 2024 decision and even the IJ's October 2022 decision. *See, e.g.*, A.R. at 95–115 (2023 State Department Travel Advisory);[4] 116–50 (2023 State Department Report); 151–55 (2023 Human Rights Watch Report); 156–64 (2022/2023 Amnesty International Report); 166–268 (Various reports on the mental-health effects on families of removed persons published between 2010 and 2017). And any evidence that post-dated the hearings, such as the medical assessments of Orta Martinez's children, does not depart from similar evidence that the IJ previously assessed or that the BIA discussed in its decision. To the extent that any of the evidence submitted by Orta Martinez is even new and the BIA failed to discuss it, even if "the agency's reasoning was inadequate, its decision may be upheld on the basis of harmless error if [a] petitioner's prospects are otherwise so weak that there is no reason to believe that remand might lead to a different result." *Japarkulova v. Holder*, 615 F.3d 696, 701 (6th Cir. 2010) (citation modified). Such is the case here. We see no reasonable prospect that remand might lead to a different result, and any possible error by the BIA was harmless. *See Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." (citation modified)).

---

[4] This travel advisory is dated August 22, but the year is obstructed. *Id.* at 95. Because the State Department Travel Advisories Map cites an August 22, 2023 Travel Advisory regarding its "[d]o not travel" designation for Michoacán, *see* U.S. DEP'T OF STATE, Travel Advisories Map, https://travelmaps.state.gov/TSGMap, we find it likely that this travel advisory pre-dated the BIA's decision.

Moreover, the BIA provided a rational explanation in denying Orta Martinez's motion to reopen. The BIA correctly stated that Orta Martinez "has not shown prima facie eligibility for cancellation of removal." A.R. at 3 (BIA Order Mot. to Reopen at 1). The BIA highlighted that Orta Martinez "submits evidence of psychological, academic, and financial hardship to [A.C. and C.G.] related to his removal that we previously considered in reviewing the respondents application for removal," citing to the evidence that Orta Martinez presented in support of his motion to reopen. *Id.* at 4 (BIA Order Mot. to Reopen at 2). The BIA explained that "[a]fter careful review of the entire record evidence, we conclude that [Orta Martinez] has not provided any evidence or argument of heightened hardship to his United States Citizen children that is beyond that which would normally be expected to occur when a close family member is removed." *Id.* at 4 (BIA Order Mot. to Reopen at 2).

On occasion, we have remanded proceedings to the BIA where the BIA's decision does not name and analyze every piece of evidence submitted by the petitioner. For example, in *Ishac v. Barr*, we remanded proceedings to the BIA where the BIA provided a "cursory, and, in at least one instance, plainly erroneous" conclusion regarding new evidence submitted by the petitioner and failed to address state department records that favorably informed the merits of the petitioner's application for cancellation of removal. 775 F. App'x 782, 792–93 (6th Cir. 2019). We highlighted that the BIA provided no "rational explanation" for denying the petitioner's motion and noted: "After reviewing the BIA's published precedent in this area, we see nothing in them to doom [the petitioner's] claim; indeed, his claim seems to compare favorably with those applications the BIA has granted." *Id.* at 790–92. Similarly, in *Marqus v. Barr*, we remanded proceedings to the BIA where the BIA provided "little more than a bald statement" that new evidence was insufficient. 968 F.3d 583, 593 (citation omitted). We highlighted that the "BIA

even recognized that the new evidence [the petitioner] presents on appeal might help his argument" and noted that "it is clear to us that the new evidence, particularly the [state department] reports, could be significant to his case." *Id.* (citation modified). Unlike in *Ishac* and *Marqus*, however, Orta Martinez does not present any argument or evidence (to the extent any evidence is even new) that shows that he has a favorable application for cancellation of removal under our precedent.

The dissent contends that the BIA's failure to name and analyze every piece of evidence submitted by Orta Martinez constitutes an error warranting remand. But the dissent does not point to any evidence submitted by Orta Martinez that is new and material, or in other words, would change the result of the immigration proceedings if the BIA considered it. The dissent highlights that the 2023 State Department Report, the 2023 State Department Travel Advisory, and the 2023 Human Rights Watch Report may be considered new but does not explain how the consideration of that evidence would change the result of the BIA's decision. Nor does the dissent explain how these reports provide any information that differs from the previously considered evidence regarding the conditions in Mexico. Indeed, the 2023 State Department Report begins with the statement: "There were no significant changes in the human rights situation in Mexico during the year," A.R. at 116, and most of the 2023 Human Rights Watch Report's conclusions are based on data and trends pre-dating 2022, *see id.* at 151-55. The dissent similarly does not explain how any other evidence submitted by Orta Martinez is material, such as the evidence of A.C.'s scholarship opportunities. The IJ already reasonably found that A.C. and C.G. are not required to return to Mexico and could remain with their mother and grandmother in their home. *Id.* at 321–23 (IJ Op. at 5–7). And A.C. is only months away from her high school graduation, after which she is free to go to college and take advantage of the scholarships that she has earned. *Id.* at 68 (Letter from

A.C.'s teacher). Without pointing to any specific evidence submitted by Orta Martinez that is in fact new and material, it cannot be said that the circumstances in this case warrant remand.

This case does not involve a determination made "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Lopez*, 990 F.3d at 1002. Therefore, although the BIA's decision does not name and analyze every piece of evidence submitted by Orta Martinez, the BIA did not abuse its discretion in denying Orta Martinez's motion to reopen. *See Allabani v. Gonzales*, 402 F.3d 668, 675–76 (6th Cir. 2005) (concluding that the BIA did not abuse its discretion in denying a motion to reopen where the submitted evidence was previously "available" and the BIA provided a "reasoned explanation").

### III. CONCLUSION

For the reasons set forth above, we **DENY** the petitions for review.

**KAREN NELSON MOORE, Circuit Judge, dissenting in part.** I agree that the BIA did not err in denying Orta Martinez's application for cancellation of removal, and that Orta Martinez did not forfeit his arguments as to his motion to reopen. I part ways with the majority, however, on the question of whether the BIA erred in denying Orta Martinez's motion to reopen. Because I believe that we should remand Orta Martinez's motion to reopen to the BIA, I respectfully dissent in part.

We review the BIA's denial of a motion to reopen for an abuse of discretion. *Galvez-Bravo v. Garland*, 119 F.4th 1038, 1041 (6th Cir. 2024). The BIA "abuses its discretion when it does not consider the petitioner's proffered evidence and 'articulate the basis for its decision' so as to inhibit 'meaningful review by an appellate court.'" *Yousif v. Garland*, 53 F.4th 928, 936 (6th Cir. 2022) (quoting *Akrawi v. Garland*, No. 19-3896, 2022 WL 3681260, at *7 (6th Cir. Aug. 25, 2022)). This includes when the BIA "neither name[s] the new evidence nor articulate[s] why the new evidence was insufficient." *Id.* at 937 (quoting *Akrawi*, 2022 WL 3681260, at *8).

There are "at least three independent grounds on which the BIA might deny a motion to reopen—failure to establish a prima facie case for the relief sought, failure to introduce previously unavailable, material evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought." *Trujillo Diaz v. Sessions*, 880 F.3d 244, 249 (6th Cir. 2018) (quoting *Zhang v. Mukasey*, 543 F.3d 851, 854 (6th Cir. 2008)). Importantly, in reviewing the BIA's decision, "we look *only* at 'the basis articulated in the decision" and "review *only* that ground." *Id.* at 248–49 (emphasis added) (quoting *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004)). "[We] may not assume that the [BIA] considered factors that it failed to mention in its opinion.'" *Id.* at 248 (quoting *Daneshvar*, 355 F.3d at 626).

In this case, the BIA denied relief on the ground that Orta Martinez "ha[d] not shown prima facie eligibility for cancellation of removal." A.R. at 3 (BIA Order Mot. to Reopen at 1). The BIA stated that Orta Martinez submitted "evidence of psychological, academic, and financial hardship to his qualifying relatives related to the respondent's removal that we previously considered in reviewing the respondent's application for cancellation of removal." A.R. at 4 (BIA Order Mot. to Reopen at 2). This language does not make it entirely clear whether the BIA meant to convey that it had previously considered this evidence, or that it had previously considered the psychological, academic, and financial hardship to his qualifying relatives. The BIA then found that "[a]fter careful review of the entire record evidence, . . . the respondent has not provided any evidence or argument of heightened hardship to his United States Citizen children that is beyond that which would normally be expected to occur when a close family member is removed." *Id.* The BIA noted that Orta Martinez had "submitted" psychological reports and evaluations for A.C. and C.G., but determined that the reports did not change the analysis because they "indicate[d] progress in their wellbeing resulting from their therapeutic treatments" and Orta Martinez's assets and transferable skills would "assist in the[ir] continuing care." *Id.* If that were all the evidence that Orta Martinez submitted, that discussion, though brief, would not constitute an abuse of discretion for failing to explain sufficiently the decision or to consider relevant evidence. *See Akrawi*, 2022 WL 3681260, at *8.

The BIA, however, did not mention the vast majority of the evidence that Orta Martinez presented with his motion to reopen, let alone discuss or analyze it. The evidence included letters showing that A.C. would receive scholarships to attend Michigan universities if she continued to reside in the state, discussing how less than eighteen percent of people in Aporo have a high school degree, describing the state of education in Michoacán, and relaying the dangerous conditions in

the town the family will relocate to in Michoacán. *See* A.R. at 68 (Letter from A.C.'s Teacher); *id.* at 76–77 (Letter from Family Member at 1–2); *id.* at 70 (Letter from Federal Teacher in Mexico); *id.* at 66–67 (Letter from Executive Director at 1–2). Additionally, Orta Martinez provided a Travel Advisory issued by the State Department that told United States citizens not to travel to Michoacán due to "crime and kidnapping," a State Department report on Mexico that concluded there were "significant human rights issues, includ[ing] credible reports of unlawful and arbitrary killings," reports from Human Rights Watch and Amnesty International, and academic and news articles detailing the negative impact deportations have on the children of noncitizens. *See id.* at 166–268 (Various Academic and News Articles on the Effect of Deportation on the Deportee's Children); *id.* 95, 106–07 (Travel Advisory at 1, 13–14); *id.* at 116 (State Department Report on Mexico at 1); *id.* 153 (Human Rights Watch Report); *id.* 156 (Amnesty International Report).

The BIA is not required to "needlessly discuss documents on points of fact not material to its decision" if it finds that the petitioner's motion failed on a ground to which the evidence does not relate. *Zhang*, 543 F.3d at 854–55. But when the evidence addresses relevant issues, we have held that "failure to address . . . [relevant evidence] submitted, for the first time, in support of [a petitioner's] motion for [reopening]" is an abuse of discretion that warrants remand. *Ishac v. Barr*, 775 F. App'x 782, 793 (6th Cir. 2019); *see also Marqus v. Barr*, 968 F.3d 583, 593 (6th Cir. 2020). The BIA's opinion here failed to address relevant new evidence presented by Orta Martinez. For example, the BIA "did not even name . . . let alone analyze," *Marqus*, 968 F.3d at 593, evidence of the impact Orta Martinez's removal would have on the children's education via the loss of A.C.'s scholarships, the conditions in Michoacán schools, and the low rate of high-school

graduation in Aporo. Such evidence is relevant to whether A.C. and C.G. will suffer exceptional and extremely unusual hardship if Orta Martinez is removed.

True, there may be valid reasons that this evidence did not affect the BIA's conclusion. For example, as the majority concludes, some of the evidence submitted by Orta Martinez may have been available previously, a ground on which the BIA can deny a motion to reopen. *See, e.g.*, A.R. at 166–268 (various reports on the mental-health effects on families of removed persons published between 2010 and 2017). Critically, however, the BIA did not say that it rejected certain evidence or denied relief on the ground that the evidence was previously available. The majority's conclusion therefore runs aground on our caselaw holding that "[w]hen the board denies relief on a particular ground, we review only that ground." *Trujillo Diaz*, 880 F.3d at 249. The majority also concludes that evidence that became available after the IJ's October 2022 decision, issued the same day as Orta Martinez's hearing, was previously available because it predated the BIA's July 2024 decision. Majority Op. at 17. But we have held that a motion to reopen may be denied because it offered evidence that was previously available only if the evidence was available at the time of the hearing before the IJ, not at the time the BIA issued its opinion. *Abdulahad v. Garland*, 99 F.4th 275, 285 (6th Cir. 2024); *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 317 (6th Cir. 2018).[1] Therefore, Orta Martinez's evidence that postdates the 2022 hearing before the IJ, should not be rejected on that basis. That evidence includes the letters detailing the scholarships that A.C. is eligible for, the 2023 State Department Report, the 2023 State Department Travel Advisory, and the 2023 Human Rights Watch report. A.R. at 68 (Letter from A.C.'s Teacher); *id.* at 76–77 (Letter

---

[1] An unpublished opinion took the opposite view and found that the BIA may reject evidence as previously available if it became available during the pendency of the appeal to the BIA. *Nsongi Mbonga v. Garland*, No. 22-3851, 2023 WL 6785990, at *4–5 (6th Cir. Oct. 13, 2023). Our prior published opinions bind us, not our unpublished opinions, so we must follow *Hernandez-Perez*. *See United States v. Cogdill*, 130 F.4th 523, 527 (6th Cir. 2025); *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 283 (6th Cir. 2016).

from Family Member at 1–2); *id.* at 95–115 (2023 State Department Travel Advisory); *id.* at 116–50 (2023 State Department Report); *id.* at 151–55 (2023 Human Rights Watch Report).

The majority ultimately concludes that the BIA's failure to explain that it did not consider certain evidence on the ground that it was previously available and its failure to discuss other relevant evidence were harmless errors. *See* Majority Op. at 17–19. "[W]e have endorsed a limited application of the harmless-error doctrine in the immigration context," but when the BIA errs "the 'proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Abdulahad*, 99 F.4th at 295 (quoting *Mapouya v. Gonzales*, 487 F.3d 396, 405 (6th Cir. 2007)). I do not believe this is one of those "rare circumstances" because the Government did not argue that the BIA's error was harmless. The Government's failure to raise that ground on which we could affirm the BIA's opinion forfeits the issue. *See Ayers v. Hudson*, 623 F.3d 301, 317 n.12 (6th Cir. 2010). True, we have sometimes raised harmless error sua sponte in other contexts. *See United States v. Butts*, 40 F.4th 766, 774 (6th Cir. 2022). But I would decline to do so here given the amount of evidence that the BIA failed to mention or analyze and because "we have endorsed [only] a limited application of the harmless-error doctrine in the immigration context." *Abdulahad*, 99 F.4th at 295.

Accordingly, I would hold that the BIA abused its discretion in denying Orta Martinez's motion to reopen and would grant the petition for review in No. 25-3161.